**WICHITA FALLS & SOUTHERN R. CO.**

v.

**LODGE NO. 1476, INTERNATIONAL ASS'N OF MACHINISTS et al.**

No. 15512.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 19, 1954.

Rehearing Denied March 19, 1954.

Bullington, Humphrey, Humphrey & Fillmore and Leslie Humphrey, Wichita Falls, for appellant.

Mullinax & Wells and Houston Clinton, Jr., Dallas, for appellees.

BOYD, Justice.

Appellant, Wichita Falls & Southern Railroad Company, sought a temporary injunction in the trial court against appellees, Lodge No. 1476, International Association of Machinists et al., to enjoin them from establishing picket lines on or continuing to picket the properties and lines of appellant; from, by any acts, deeds, threats, warnings or exhortations, preventing or attempting to prevent the employees of appellant from crossing their picket line or lines, and, from conducting themselves in any manner so as to persuade appellant's employees not to cross said picket line into and from the premises of Wichita Engineering Company; that appellees be required to remove their pickets and all signs from the properties of appellant; and that they be enjoined from picketing upon or across appellant's properties and from placing signs thereon. There was a prayer for permanent injunction upon final hearing. Appellant did not sue for damages.

Appellees filed a plea to the jurisdiction, alleging that the matters complained of were subject to the exclusive jurisdiction of the National Labor Relations Board under the provisions of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 151 et seq. This plea was sustained.

Appellant alleged that it is a railway corporation and a common carrier for hire, engaged in commerce, transporting freight, goods, wares and merchandise for hire in interstate and intrastate commerce; and owes the duty and obligation to serve all patrons and customers without discrimination, and has the common law and statutory duty to receive and transport and deliver freight when and as requested over its lines, switches and terminals; that Wichita Engineering Company is a corporation located in the city of Wichita Falls, and on the line and lines of appellant, and is engaged in the manufacture

of goods, wares and merchandise to be sold in interstate and intrastate commerce; that appellant has for a long time prior to the filing of the suit been engaged in servicing the factory of said Engineering Company, delivering freight, goods and raw materials to its plant, and receiving therefrom freight to be transported in both state and interstate commerce; that to effect this service appellant built a spur track and siding from its main line into and on the properties of Wichita Engineering Company and into its loading racks and platforms, and appellant owns such easements, spur tracks and sidings constructed to facilitate the handling of freight both to and from the plants of said Engineering Company; that by the wrongful acts and conduct of appellees, appellant has been prevented from entering the properties of said Engineering Company on appellant's tracks and lines and prevented from delivering and receiving freight therefrom; that the Engineering Company holds contracts with the Department of the Army of the United States, calling for shipment of some eighty carloads of defense material, and that there are now certain carloads of such material ready for shipment and the Engineering Company has notified appellant that such carloads are ready for shipment and that more will be ready shortly at an average of about three carloads per week; that appellant has no labor controversy or other controversy with anyone, either its own employees or the employees of the Engineering Company; that appellees have unlawfully and wrongfully established a picket line on, adjacent to, and across appellant's tracks, easements and right of way leading from its main line into the platform and factory of the Engineering Company, and is maintaining said picket lines and picketing the line of appellant where it enters and occupies properties leading into said factories; that appellees have approached appellant's employees and threatened and coerced said employees from entering the lines and properties owned by appellant leading into the factories of the Engineering Company, and have told appellant's employees and train operators that they,

appellees, were on strike and were picketing the entrance of the Engineering Company's plant and asked appellant's employees to observe the picket lines, thus creating a formidable weapon as between members of labor unions which effectively prevents appellant's employees from entering upon and going through the picket lines; that the same amounts to threats and coercion and prevents appellant's ability to carry its freight into the factories of said Engineering Company or to receive freight from such factories and transport it into state and interstate commerce, and that such interferes with appellant's right to transport goods required in National defense and is an abridgement of appellant's statutory, common law, constitutional and contractual rights and duties; that appellees are guilty of secondary picketing, that is, establishing pickets at or near the premises of appellant, being its easement and tracks leading into the factories of said Engineering Company, and appellees are guilty of secondary boycott by picketing the properties of appellant by establishing lines of pickets adjacent thereto so as to prevent appellant's operatives from entering the premises of the Engineering Company and from receiving and delivering freight, and are preventing the free flow of commerce; by acts, threats, exhortations, warnings and exhibition of signs, appellees will cause appellant irreparable injury by preventing appellant's employees from crossing the picket line over appellant's right of way into the premises of the Engineering Company, by preventing appellant from delivering freight to and transporting freight from said Company's plant, and by preventing appellant from discharging its duties and rights as a common carrier, and that appellant has no adequate remedy at law.

The question presented for determination is whether, by the Labor Management Relations Act, Congress has preempted the field so as to exclude the authority of the state court to entertain this suit.

That part of the Labor Management Relations Act, 29 U.S.C.A., deemed to be applicable to the instant case is as follows:

Sec. 157. "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own chosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3) of this title."

Sec. 158. " * * * (b) It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: * * *.

\* \* \* \* \* \*

"(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring any employer or self-employed person to join any labor or employer organization or any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person; * * *."

It has long been the rule that for an act of Congress completely to displace a state law, the conflict must be direct and positive, so that the two acts cannot be reconciled or consistently stand together. Sinnot v. Davenport, 22 How. 227, 63 U.S. 227, 16 L.Ed. 243. The Commerce Clause of the Constitution has never been thought to prevent the states from limiting " 'individual and group rights of aggression and defense' ". International Union, U. A. W., A. F. of L., Local 232 v. Wisconsin Employment Relations Board, 336 U.S. 245,

69 S.Ct. 516, 520, 93 L.Ed. 651. The intention of Congress to exclude states from asserting their police powers must be clearly manifested. International Union v. Wisconsin Empl. Rel. Bd., supra; Allen-Bradley Local v. Wisconsin Employment Relations Board, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154; Napier v. Atlantic Coast Line R. Co., 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432. But the exclusion of state action may be implied from the nature of the legislation and its subject matter, especially when the subject matter is " 'intimately blended and intertwined with responsibilities of the national government' ", although express declaration of such result is wanting. Bethlehem Steel Co. v. New York States Labor Relations Board, 330 U.S. 767, 67 S.Ct. 1026, 1029, 91 L.Ed. 1234; Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581; Napier v. Atlantic Coast Line R. Co., supra.

■ Apart from preemption by Congress, it has been said that the states are free to characterize any wrong by an employer to an employee as an unfair labor practice. Algoma Plywood & Veneer Co. v. Wisconsin Employment Relations Board, 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691. And we apprehend that any such wrong by an employee to an employer may be so characterized. But the state may not deal with matters left to its control so as to stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, supra [312 U.S. 52, 61 S.Ct. 404].

■ That state action is precluded when Congress has made comprehensive regulations to govern a particular subject matter is no longer open to question. Napier v. Atlantic Coast Line R. Co., supra; International Union of U. A. A. & A. v. O'Brien, 339 U.S. 454, 70 S.Ct. 781, 94 L.Ed. 978.

It has been recently held that although the Labor Management Relations Act leaves much to the states, Congress has not said how much, and "We must spell out from conflicting indications of congressional will the area in which state action is still permissible." Garner v. Teamsters, C. & H. Local Union, 346 U.S. 485, 74 S.Ct. 161, 164, 98 L.Ed. ——. We believe that a considerable portion of the area in which state action is not permissible has been "spelled out" by Federal courts in at least three recent decisions. The case last cited is one. The others are Capital Service, Inc. v. National Labor Relations Board, 9 Cir., 204 F. 2d 848, and Building Trades Council v. Kinard Construction Co., 346 U.S. 933, 74 S.Ct. 373, 98 L.Ed. ——.

In the Garner case a labor union peacefully picketed the loading platform of an interstate trucking company for the purpose of inducing its employees to join the union. No labor dispute was in progress and at no time had the company objected to its employees' joining the union. The pickets were not employees of the company. Drivers for their carriers refused to cross the picket line and as a consequence the company's business decreased as much as ninety-five per cent. The Pennsylvania court enjoined the union's conduct as a violation of the state Labor Relations Act. The Supreme Court of that state reversed the trial court and the Supreme Court of the United States granted certiorari and affirmed the Pennsylvania Supreme Court, 373 Pa. 19, 94 A.2d 893, holding that the Federal Labor Relations Act not merely lays down a substantive rule of law but centralizes administration of specially designed procedures to obtain uniform application to avoid conflicts likely to result from a variety of local procedures and attitudes toward labor controversies, and that state courts are excluded by the Act from assuming control of matters expressly placed within the competence of the National Labor Relations Board; that when Federal power is constitutionally exerted for the protection of public or private interests, it becomes the supreme law of the land and cannot be curtailed, circumvented or extended by state procedure; and that a state court has no power to enjoin a labor union from peaceful picketing, through nonemployees, for the purpose of coercing a company to influence its employees to

join the union, although no labor dispute was in progress.

In Kinard Construction Co. v. Building Trades Council, 258 Ala. 500, 64 So.2d 400, the Alabama Supreme Court held that an employer was entitled to have unions enjoined from picketing its construction project to coerce the petitioner into forcing its employees to be or become members of such unions, or one of them. On January 18, 1954, the Supreme Court of the United States entered this Per Curiam opinion: "The petition for writ of certiorari is granted, and the judgment is reversed. Garner v. Teamsters, Chauffeurs & Helpers, Local Union No. 776 (A.F.L.) 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. ——. Since there has been no clear showing that respondent has applied to the National Labor Relations Board for appropriate relief, or that it would be futile to do so, the Court does not pass upon the question suggested by the opinion below of whether the state court could grant its own relief should the Board decline to exercise its jurisdiction." Building Trades Council v. Kinard Construction Co., 346 U.S. 933, 74 S.Ct. 373, 98 L.Ed. ——.

In Capital Service, Inc. v. National Labor Relations Board, 9 Cir., 204 F.2d 848, a state court granted an injunction against certain labor unions' inducement of persons to refrain from purchasing a corporate defendant's bakery products by picketing its customers for the purpose of forcing its employees to join one of the unions. The Federal District Court granted a preliminary injunction restraining the enforcement of the injunction in the state court and the Court of Appeals affirmed. The Supreme Court granted certiorari limited to this question: "In view of the fact that exclusive jurisdiction over the subject matter was in the National Labor Relations Board, Garner v. Teamsters, Chauffeurs & Helpers, Local Union No. 776 (A.F.L.), 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. ——, could the Federal District Court, on application of the board, enjoin petitioners from enforcing an injunction already obtained from the State court." Capital Service,

Inc. v. National Labor Relations Board, 346 U.S. 936, 74 S.Ct. 375, 98 L.Ed. ——.

We construe the Supreme Court's action in limiting the certiorari to the question quoted as approving the other holdings of the Court of Appeals.

■ We cannot escape the conviction that in this suit appellant is complaining of actions of appellees in inducing or encouraging appellant's employees "to engage in, * * * a concerted refusal in the course of their employment to * * * transport, or otherwise handle * * * goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring * * * any employer or other person to cease * * * handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person; * * *." 29 U.S.C.A. § 158(b) (4). Appellant's remedy is to be found in the procedure provided for in the Labor Management Relations Act.

■ Appellant relies on International Molders & F. W. Union v. Texas Foundries, Tex.Civ.App., 241 S.W.2d 213 (reversed on other grounds, Tex.Sup., 248 S.W.2d 460), International Brotherhood v. Missouri Pac. Fr. Tr. Co., Tex.Civ.App., 220 S.W.2d 219, writ refused n. r. e., and Ex parte Henry, 147 Tex. 315, 215 S.W.2d 588, as authority for holding that the state court's jurisdiction to enjoin actions in violation of the state law has not been superseded by the Labor Management Relations Act. It is thought that these cases may be distinguished on their facts. Moreover, they were all decided before the decisions were rendered in Garner v. Teamsters, C. & H. Local Union, supra, Capital Service, Inc. v. National Labor Relations Board, supra, and Building Trades Council v. Kinard Construction Co., supra. Constitutionally exerted power of Congress becomes the supreme law of the land, "anything in the constitution or laws of any state to the contrary notwithstanding;" and in the field of Federal-state relations

we are bound by the decisions of the United States Supreme Court.

Believing that the controversy here involved comes within the terms of the Labor Management Relations Act, we have concluded that the trial court correctly held that it was without jurisdiction to entertain appellant's suit.

The judgment is affirmed.